UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 19-173** |
| v. | * | **SECTION: "H"** |
| **RODNEY J. STRAIN, JR.** a/k/a "Jack Strain" | * | |
| | * | |
| | * | |

\* \* \*

## GOVERNMENT'S MOTION TO ADMIT LAY OPINION TESTIMONY

**NOW INTO COURT**, comes the United States of America, appearing herein through the undersigned Assistant United States Attorneys, and hereby requests that the Court admit lay opinion testimony about the policies and practices related to the operation of work release programs in the State of Louisiana. The Fifth Circuit has consistently approved the use of lay opinion testimony based on a witness's training and experience in a particular business, as well as similar testimony from law enforcement agents who have investigated the business. In this case, the government anticipates it will seek to admit such testimony from the following categories of witnesses:

- State government employees and officials whose jobs involve work release programs;

- Former employees and officers at the Slidell and Covington work release programs; and

- Law enforcement agents and investigators who investigated the Slidell work release program.

For the reasons set forth below, these witnesses should be permitted to give lay opinion testimony about the policies and practices related to work release programs without expert qualification.

## FACTS AND PROCEDURAL HISTORY[1]

This case arises out of a fraudulent profiteering scheme involving a prisoner work release program. The defendant, Rodney J. ("Jack") Strain, was the sheriff for the St. Tammany Parish Sheriff's Office. The Sheriff's Office was responsible for operating work release programs for qualified prisoners within St. Tammany Parish. Through work release programs, prisoners could earn wages by working in non-custodial, private workplaces. The work release programs generated income for the entities that oversaw them, including the Sheriff's Office and private companies that were granted the right to operate the work release programs by the Sheriff's Office.

One such work release program was located in Slidell, Louisiana. In 2013, Strain decided to privatize the Slidell work release program. Strain entered into an agreement on behalf of the Sheriff's Office with St. Tammany Workforce Solutions, LLC. The agreement stated, in relevant part, that Strain would lease a facility to St. Tammany Workforce Solutions which it would then use to operate and manage the Slidell work release program. St. Tammany Workforce Solutions operated the Slidell work release program from 2013 to 2016.

On its face, the privatization of the Slidell work release program appeared legitimate. However, the three individuals who served as the officers and registered agent for St. Tammany Workforce Solutions were well known to Strain. They included Person 2; B.H., the adult daughter of Strain's friend and Sheriff's Office employee David Hanson; and J.K., the adult son of Strain's friend and Sheriff's Office employee Clifford "Skip" Keen.[2]

---

[1] Unless otherwise noted, the facts below are taken from the allegations in the indictment. *See* Rec. Doc. 1.

[2] Hanson and Keen have pleaded guilty to conspiracy to commit honest services wire fraud and bribery. *See* E.D. La. No. 18-242, Doc. 27 (Hanson plea agreement); Doc. 29 (Keen plea agreement).

The evidence at trial will establish that Strain, Hanson, and Keen devised an illegal scheme consisting of two components: fraud and bribery. As to the fraud, B.H. and J.K. were straw owners of St. Tammany Workforce Solutions. They were installed as officers with the company by Strain, Hanson, and Keen so that their fathers, Hanson and Keen, could profit from the Slidell work release program without resigning from their positions at the Sheriff's Office.[3] Neither B.H. nor J.K. operated, oversaw, or administered the Slidell work release program. B.H. and J.K. had no experience with operating a halfway house, and they lacked the finances to do so. Nevertheless, B.H and J.K. each owned 45 percent of the company, received salaries, and received payments from Person 2. Collectively, B.H. and J.K. received over $1.195 million from the scheme, and they funneled a significant portion of these proceeds to Hanson and Keen. As to bribery, Hanson and Keen used a portion of the Slidell work release program profits to give kickbacks to Strain and his family members in exchange for his contracting with St. Tammany Workforce Solutions to operate the Slidell work release program. Included among the kickbacks were regular cash payments to Strain, a sizable check to Strain's son, a campaign donation, and a $30,000 per year no-show job for Person 3, a Sheriff's Office employee and relative of Strain's.

In August 2019, a federal grand jury in the Eastern District of Louisiana charged Strain in a 16-count indictment with honest services wire fraud, bribery, and conspiracy. Rec. Doc. 1. Trial is currently scheduled to begin on December 6, 2021. Rec. Doc. 50.

---

[3] Conflict-of-interest rules precluded Hanson and Keen from remaining employed by the Sheriff's Office while also formally and legitimately owning the Slidell work release program.

**LAW AND ARGUMENT**

I.     **Lay opinion testimony.**

Federal Rule of Evidence 701 governs the admission of opinion testimony from lay witnesses. Under Rule 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [governing the admission of expert testimony]." Fed. R. Evid. 701. The Fifth Circuit has held that admissible lay opinion "must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) (quotation marks omitted). "[T]he modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Id.* at 429.

The Fifth Circuit has "allowed lay witnesses to express opinions that required specialized knowledge," particularly when "[n]o great leap of logic or expertise was necessary." *See id.* at 428; *see also United States v. Sanjar*, 876 F.3d 725, 738 (5th Cir. 2017) ("[E]ven if such testimony requires some specialized knowledge, it is admissible so long as the lay witness offers straightforward conclusions from observations informed by his or her experience."). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Ebron*, 683 F.3d 105, 136-37 (5th Cir. 2012) (quotation marks and brackets omitted). "[A]n officer or employee of a

4

corporation may testify to industry practices and pricing without qualifying as an expert." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003).

The Fifth Circuit has routinely approved lay opinion testimony based on a witness's training and experience, including testimony from the former chief risk officer for a natural gas trading company, *see United States v. Valencia*, 600 F.3d 389, 413-16 (5th Cir. 2010); a health care fraud investigator, *see United States v. Chikere*, 751 F. App'x 456, 460 (5th Cir. 2018); a special investigator at a prison, *see United States v. Jackson*, 549 F.3d 963, 975 (5th Cir. 2008); the vice president of a research foundation, *see Texas A&M Research Found.*, 338 F.3d at 403; a corporate claims manager, *see Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551-52 (5th Cir. 2005); and a janitor. *See Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 330 n.1 (5th Cir. 2017) ("We conclude that a janitor with fifteen years' experience is competent to testify about the effectiveness of cleaning products and methods.").

Courts have also approved the admission of lay opinion testimony based on personal observations from treating physicians, *see Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316-18 (11th Cir. 2011); *United States v. Wells*, 211 F.3d 988, 998 (6th Cir. 2000); *Peshlakai v. Ruiz*, No. CIV 13-0752 JB/ACT, 2013 WL 6503629, at *18 n.8 (D.N.M. Dec. 7, 2013), and from accountants or other financial professionals. *See Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013); *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181-82 (2d Cir. 2004); *see also United States v. Woody's Trucking, LLC*, No. CR 17-138-BLG-SPW, 2018 WL 985760, at *2 (D. Mont. Feb. 20, 2018) (collecting cases).[4]

---

[4] Special issues arise when lay opinion testimony is admitted in narcotics prosecutions, specifically as it relates to law enforcement agents' describing drug traffickers' code words and the "tools of the trade" for drug trafficking. *See United States v. Staggers*, 961 F.3d 745, 760-62 (5th Cir.), *cert. denied* 141 S. Ct. 388 (2020); *United States v. Haines*, 803 F.3d 713, 726-34 (5th Cir. 2015); *United States v. Macedo-Flores*, 788 F.3d 181, 191-92 (5th Cir. 2015); *United States v. Akins*, 746 F.3d 590, 597-603 (5th Cir. 2014); *United States v. Yanez Sosa*, 513 F.3d 194, 199-203 (5th Cir. 2008); *United States v. Miranda*, 248 F.3d 434, 441

5

For example, in *Valencia*, the Fifth Circuit approved the admission of lay opinion testimony from the former chief risk officer for a natural gas trading company. *Valencia*, 600 F.3d at 413-16. During his testimony, the risk officer "recreated much of the analysis he regularly performed when evaluating risk tolerances." *Id.* According to the Fifth Circuit, because the risk officer's "knowledge and analysis were derived from his duties he held" at the company, "his opinions were admissible as testimony based upon personal knowledge and experience gained while employed" there. *Id.* The risk officer "engaged in precisely the kind of analysis he regularly performed as chief risk officer; the fact that he drew particular opinions and projection for the purposes of this case does not make him an 'expert' within the meaning of Federal Rule of Evidence 702." *Id.*

Similarly, in *United States v. McMillan*, 600 F.3d 434, 455-57 (5th Cir. 2010), the Fifth Circuit upheld the admission of lay opinion testimony in a case involving a health maintenance organization known as The Oath. The district court allowed three fact witnesses to give opinion testimony "based on Louisiana's statutory accounting rules when the witnesses were not qualified as experts in Louisiana law." *Id.* at 455. The defendants argued that the witnesses should not have been permitted "to opine about the application of Louisiana accounting rules to The Oath, such as whether The Oath should have reported certain cash infusions and receivables as assets affecting net equity," and that the witnesses "gave improper testimony based on the law of other states rather than Louisiana." *Id.* at 456. The Fifth Circuit disagreed, stating that, although one witness "defined certain accounting terms during the course of his testimony, he provided factual information about

---

(5th Cir. 2001); *United States v. Solis*, 750 F. App'x 357, 359-61 (5th Cir. 2018); *United States v. Smith*, 670 F. App'x 226, 226-27 (5th Cir. 2016); *United States v. Whittington*, 269 F. App'x 388, 408 (5th Cir. 2008). Although the cases dealing with these issues address lay opinion testimony under Rule 701, they involve concerns that largely are not present here because law enforcement agents will not be interpreting the defendants' code words (*e.g.*, when the defendant says "gator meat," he means heroin, *see Staggers*, 961 F.3d at 762) or describing "tools of the trade," such as cutting agents, presses, and money counters.

the circumstances of the case and his interaction with" one of the defendants. *Id.* The second witness, an insurance adjustor hired by a defendant to investigate possible recoveries of claims from Medicare, gave testimony that "generally concerned this investigation and the conclusions he reached about possible receivables." *Id.* The Fifth Circuit held that both witnesses "properly testified as fact witnesses about their observations and perceptions in the case in response to specific solicitations from" the defendant. *Id.* The third witness was an auditor hired by the state Department of Insurance to conduct a targeted review of The Oath's financial statements. *Id.* He testified "about his actions in reviewing The Oath's assets and his finding that certain claimed receivables on the statements did not qualify as admitted assets." *Id.* at 456-57. This testimony likewise was admissible as lay opinion under Rule 701. *Id.* at 457.

More recently, in *United States v. Moparty*, ___F.4th___, 2021 WL 3720088, at *10 (5th Cir. Aug. 23, 2021), the Fifth Circuit approved the admission of lay opinion testimony from representatives of health insurance companies "largely related to the procedures, policy terms, and fraud prevention protections at each insurance company." *Moparty*, 2021 WL 3720088, at *10. For example, a representative from Blue Cross Blue Shield "addressed how the company would handle various situations, how it interpreted terms and policies, and how their policies compared to those of the industry." *Id.* Additionally, an Aetna representative's testimony "focused on Aetna's policies and practices." *Id.* "These witnesses' admissible testimony provided factual information about the circumstances of the case." *Id.* (quotation marks omitted).

**II.    Lay opinion testimony about the policies and practices related to Louisiana work release programs should be admitted.**

The lay opinion witnesses the government intends to call worked at the Slidell and Covington work release programs, investigated the Slidell work release program, or have state government jobs that involve work release programs. They have knowledge of the policies and

7

practices related to work release programs, and they are familiar with the information described in the indictment. They will not be testifying about lending practices "in the abstract," *see Riddle*, 103 F.3d at 429; rather, their testimony will be based on their particularized knowledge of Louisiana work release programs. The government offers the following brief explanations of the types of testimony it intends to elicit from these witnesses.[5] Because the witnesses gained their knowledge working with or investigating work release programs, they should be permitted to answer these questions as lay opinion witnesses under Rule 701.

      A.      **Type of information to be elicited.**

The government intends to elicit testimony regarding the following categories of information from the three types of witnesses referenced above:

- What a work release program is and how work release programs are usually staffed/organized in Louisiana;

- State and local rules, regulations, and processes governing the operation of work release programs in Louisiana;

- Conflict of interest rules and regulations;

- The financial framework (*i.e.*, compensation, reimbursement, and profiting) for Louisiana work release programs;

- State and local rules, regulations, and processes regarding the privatization of work release programs in Louisiana; and

- Requirements for an individual or corporation to operate a work release program in Louisiana.

---

[5] The topics below are not verbatim examples of what the government intends to ask on direct examination, and they do not form an exhaustive list. Rather, they are examples of categories of testimony the government intends to elicit from these witnesses.

B.  **Categories of witnesses who will testify about the pertinent issues.**

As discussed below, controlling precedent permits each category of witness to address these issues as applicable.

   1. **State government employees and officials whose jobs involve work release programs.**

Testimony by state government employees in response to these questions will not require any specialized knowledge other than the knowledge the employees gained from their own personal experiences. As such, the testimony should be admitted under Rule 701. *See Moparty*, 2021 WL 3720088, at *10; *Sanjar*, 876 F.3d at 738 ("[E]ven if such testimony requires some specialized knowledge, it is admissible so long as the lay witness offers straightforward conclusions from observations informed by his or her experience."); *McMillan*, 600 F.3d 434, 456-57; *Valencia*, 600 F.3d at 416 ("[The witness] engaged in precisely the kind of analysis he regularly performed as chief risk officer; the fact that he drew particular opinions and projection for the purposes of this case does not make him an 'expert' within the meaning of Federal Rule of Evidence 702.").

   2. **Former employees and officers at the Slidell and Covington work release programs.**

The work release program officers and employees should be permitted to answer these questions without being qualified as experts. *See Moparty*, 2021 WL 3720088, at *10; *McMillan*, 600 F.3d 434, 456; *Texas A&M Research Found.*, 338 F.3d at 403 ("[A]n officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert."); *see also Valencia*, 600 F.3d at 416 ("[The witness] engaged in precisely the kind of analysis he regularly performed as chief risk officer; the fact that he drew particular opinions and projection

9

for the purposes of this case does not make him an 'expert' within the meaning of Federal Rule of Evidence 702.").

### 3. Law enforcement agents and investigators who investigated the Slidell work release program.

The Fifth Circuit has approved the admission of this type of testimony from law enforcement agents and investigators under Rule 701. *See Jackson*, 549 F.3d at 975 (approving, on plain error review, lay opinion testimony by special investigator at a prison about "clothing that inmates typically wear when they're fighting with knives"); *United States v. Grote*, 632 F.2d 387, 390 (5th Cir. 1980) (allowing an IRS official to compare a defendant's tax returns by characterizing some as "acceptable"); *Chikere*, 751 F. App'x at 460 (approving, on plain error review, lay opinion testimony by health care fraud investigator "about how Medicare works and common fraudulent schemes she has seen"); *United States v. Redd*, No. 06-60806, 2009 WL 348831, at *5-6 (5th Cir. Feb. 12, 2009) (approving, on plain error review, lay opinion testimony by IRS agent that defendants lacked sufficient legitimate funds to purchase home or vehicles or to pay attorney's fees). As in those cases, there is "[n]o great leap of logic or expertise" necessary for a law enforcement agent or investigator to answer these questions when the agent or investigator has investigated the Slidell work release program. *See Redd*, 2009 WL 348831, at *5 (quoting *Riddle*, 103 F.3d at 428).

## CONCLUSION

For the foregoing reasons, the government requests that the Court admit lay opinion testimony about the policies and practices related to Louisiana work release programs.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY


*/s/ Jordan Ginsberg*
JORDAN GINSBERG
ELIZABETH PRIVITERA
J. RYAN McLAREN
Assistant United States Attorneys
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3121
E-Mail: Jordan.Ginsberg@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to ECF-registered counsel of record.

*/s/ Jordan Ginsberg*
JORDAN GINSBERG
Assistant United States Attorney