UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA               CRIMINAL ACTION

VERSUS                                 NO: 19-173

RODNEY STRAIN                          SECTION "H"

## ORDER AND REASONS

Before the Court is the issue of the amount of forfeiture owed by Defendant Rodney Strain.

## BACKGROUND

On December 1, 2021, pursuant to a plea agreement, Defendant Rodney Strain pleaded guilty to Count 15 of the Indictment, charging him with bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B).[1] The Indictment arose out of a bribery scheme related to St. Tammany Workforce Solutions LLC, a work release program that Defendant privatized as Sheriff of St. Tammany Parish. As part of the plea agreement,

---

[1] Doc. 69.

1

Defendant consented to the forfeiture of any right, title, and interest in all assets subject to forfeiture under the notice of forfeiture in the Indictment.[2] On March 17, 2022, the Court entered a Preliminary Order of Forfeiture in the form of a personal money judgment against Defendant in the amount of $401,427.83. On April 6, 2022, Defendant was sentenced to 120 months, and the issue of the amount of forfeiture was left open. A forfeiture hearing was set for July 13, 2022, and the Court ordered briefing from the parties on the issue.[3] The hearing was later canceled by request of the parties.[4] Thereafter, the Court reset the forfeiture hearing, and it was held on November 2, 2023.[5] The Court requested, and the parties submitted, supplemental briefing after the forfeiture hearing.[6]

## LAW AND ANALYSIS

The Indictment against Defendant provides for forfeiture of any property which constitutes or is derived from proceeds traceable to the offenses charged therein pursuant to 18 U.S.C. § 981(a)(1)(C). "Section 981(a)(1)(C) requires forfeiture of property or proceeds that are traceable to a violation of certain enumerated criminal statutes,"[7] including the crime to which Defendant pleaded guilty: bribery concerning programs receiving federal funds in

---

[2] Doc. 70.
[3] Doc. 87.
[4] Docs. 95, 96.
[5] Doc. 97.
[6] In total, the parties have filed eight briefs addressing the issue of forfeiture. Docs. 78, 83, 86, 93, 94, 105, 107, and 108. The Court has considered them all.
[7] United States v. St. Pierre, 809 F. Supp. 2d 538, 542 (E.D. La. 2011).

violation of 18 U.S.C. § 666(a)(1)(B).[8] In the Preliminary Order of Forfeiture, the Government sought to impose a forfeiture money judgment against Defendant in the amount of $401,427.83. According to the Government, that sum represents each "bribe" and "kickback" obtained throughout the entirety of the charged scheme between 2007 and 2016. Defendant contests this amount and argues that the Government has not submitted support for the amount of forfeiture requested, and it is not supported by the facts of the case. At the outset, the Government presents two arguments that Defendant should be precluded from contesting the amount of forfeiture at all: (1) because the Preliminary Order of Forfeiture became final at sentencing, and (2) because Defendant waived his right to contest the forfeiture amount in his plea agreement.

### A. Waiver at Sentencing

The Government argues that a preliminary order of forfeiture becomes final at sentencing and may only be challenged on direct appeal, and therefore, Defendant has waived his right to challenge the forfeiture amount now that his sentence is final.[9] Remarkably, the Government made this argument for the first time at the forfeiture hearing on November 2, 2023—more than 18 months after Defendant's sentencing hearing where this Court made clear its intent to determine Defendant's amount of forfeiture at a later date. At the time of sentencing, Defendant had timely raised objections to the amount of forfeiture determined by the Government in the Preliminary Order of

---

[8] Section 981(a)(1)(C) covers "specified unlawful activity (as defined in section 1956(c)(7) of this title)", and § 1956(c)(7)(D) includes "[18 U.S.C.] section 666 (relating to theft or bribery concerning programs receiving Federal funds)."

[9] *See* FED. R. OF CRIM. P. 32.2.

Forfeiture, and the Government agreed to proceed with sentencing and defer resolution of those objections. The Government consented to the setting of a forfeiture hearing at a later date. Thereafter, the Government also consented to the cancellation of the forfeiture hearing and to have the issue resolved on the briefing. At no point did the Government suggest that this Court could not decide the forfeiture issues. The Court will not now, years later, find that it cannot resolve Defendant's timely filed objections to the amount of forfeiture. The Government's failure to timely raise this argument renders it waived.

### B. Waiver in Plea Agreement

Next, the Government contends that Defendant is precluded from contesting the amount of forfeiture in light of his plea agreement. The relevant portion of the plea agreement provides:

> The defendant agrees to forfeit to the United States any right, title, and interest in all assets subject to forfeiture under the notice(s) of forfeiture contained in the charging document, including property specified in any bill of particulars and property previously seized by the government for administrative, civil, or criminal forfeiture. The defendant further consents to the filing of a motion for a preliminary order forfeiting such property and any dollar amount specified in the notice(s) of forfeiture or bill of particulars, and the defendant confesses the requisite nexus between the property and the charge(s) of conviction. The defendant hereby withdraws any petition for remission or claim for such property and further waives any right to contest or appeal the government's forfeiture proceedings for any reason, including on grounds that the forfeiture constitutes an unconstitutionally excessive fine or punishment, and in any manner, including by claim, petition, appeal, or collateral attack.[10]

---

[10] Doc. 70.

4

The Government argues based on this language that Defendant has waived his right to contest the forfeiture amount included in the Government's Preliminary Order of Forfeiture. This Court disagrees.

The plain reading of the plea agreement provides that Defendant has consented to the forfeiture of property listed in the charging document or any bill of particulars and that he consents to the filing of a preliminary order forfeiting the "property and any dollar amount specified in the notice(s) of forfeiture or bill of particulars."[11] The remainder of the paragraph relates solely to property or dollar amounts previously specified by the Government as subject to forfeiture in the charging document or a bill of particulars. Here, there was no property or dollar amount specified in the Indictment or any bill of particulars, and the Preliminary Order of Forfeiture was entered *after* Defendant signed the plea agreement. Because the Government did not file a preliminary notice of forfeiture of the $401,427.83 until after the plea agreement was signed, this waiver provision is inapplicable. The Government does not cite to any case suggesting that a Defendant can waive his right to contest a forfeiture amount prior to being informed of that amount. Further, this Court finds disingenuous the Government's position that Defendant has consented to any amount of forfeiture no matter how contrary to law and regardless of whether the Government can carry its burden to prove that amount. This argument likewise fails.

**C. Forfeiture Calculation**

Having resolved these threshold issues, the Court now considers Defendant's objections to the amount of forfeiture. The parties agree that 18

---

[11] *Id.*

5

U.S.C. § 981(a)(1)(C) applies here. Section 981(a)(1)(C) requires forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation . . . or a conspiracy to commit such offense."[12] "Proceeds," as they are defined in the statute, include "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."[13] The Government has the burden to prove the forfeitability of an amount by a preponderance of the evidence.[14]

At the outset, the parties dispute the applicability of the Supreme Court's ruling in *Honeycutt v. United States* to this matter. In *Honeycutt*, the Supreme Court held that joint and several forfeiture liability between co-conspirators is not permitted under 21 U.S.C. § 853(a)(1), the statute governing forfeiture for drug crimes.[15] Under that statute, "property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the crime is forfeitable.[16] The Court explained that forfeiture under § 853 is limited in two ways. First, forfeiture is limited to tainted property, that is, proceeds obtained as a result of the crime.[17] Second, because "obtained" means "'to come into possession of' or to 'get or acquire,'" forfeiture is limited to tainted property actually acquired or used by the defendant.[18]

---

[12] 18 U.S.C. § 981(a)(1)(C).
[13] *Id.* § 981(a)(2)(A).
[14] *St. Pierre*, 809 F. Supp. 2d at 541–42.
[15] Honeycutt v. United States, 581 U.S. 443, 448–49 (2017).
[16] 21 U.S.C. § 853(a)(1).
[17] *Honeycutt*, 581 U.S. at 449.
[18] *Id.*

6

The Fifth Circuit has not specifically addressed whether *Honeycutt* applies to forfeitures imposed under 18 U.S.C. § 981, and other circuits have reached different conclusions.[19] However, like the drug forfeiture statute considered in *Honeycutt*, section 981(a) provides that "property of any kind obtained directly or indirectly, as the result of" the crime is forfeitable.[20] Accordingly, this Court agrees with the Third and Ninth Circuits that there appears to be "no reason why the holding in *Honeycutt* does not apply with equal force" to § 981.[21] The textual differences between the statute considered in *Honeycutt* and § 981 appear to "be immaterial, in light of the reasoning and language in *Honeycutt*."[22] Therefore, this Court finds that Defendant's

---

[19] *See* United States v. Sexton, 894 F.3d 787, 799 (6th Cir. 2018) "(As long as the property is connected to the crime, a defendant can be liable for property that his codefendant acquired. Consequently, we hold that the reasoning of *Honeycutt* is not applicable to § 981(a)(1)(C)."); United States v. Gjeli, 867 F.3d 418, 428 (3d Cir. 2017), as amended (Aug. 23, 2017) ( stating there appears to be "no reason why the holding in *Honeycutt* does not apply with equal force" to § 981); United States v. Thompson, 990 F.3d 680, 689 (9th Cir. 2021) ("The textual differences between it and 21 U.S.C. § 853 appear to us to be immaterial, in light of the reasoning and language in *Honeycutt*."); United States v. Carlyle, 712 F. App'x 862, 864 (11th Cir. 2017) ("Although the forfeiture statute at issue in *Honeycutt*, 21 U.S.C. § 853, is not the same forfeiture statute at issue here, 18 U.S.C. § 981(a)(1)(C), the two statutes are largely the same in terms of their pertinent language, and so it appears that the Supreme Court's decision would apply to the statute at issue in the present case."). *Also see* United States v. Reed, 908 F.3d 102, 127 (5th Cir. 2018) (in a case involving convictions of conspiracy to commit wire fraud and money laundering, wire fraud, money laundering, false statements on income tax returns, and mail fraud, the government conceded that *Honeycutt* applied to forfeiture under 18 U.S.C. § 981(a)(1)(C)); *see also* United States v. Sanjar, 876 F.3d 725, 749 (5th Cir. 2017) (applying *Honeycutt* in health care fraud forfeiture under 18 U.S.C. § 982(a)(7)).

[20] 18 U.S.C. § 981(a)(2)(A); *see* 21 U.S.C. § 853(a)(1) (limiting forfeiture to "property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the crime).

[21] *Gjeli*, 867 F.3d at 428. *See Thompson*, 990 F.3d at 689 (9th Cir. 2021); *Carlyle*, 712 F. App'x at 864.

[22] *Thompson*, 990 F.3d at 689.

forfeiture amount is "limited to property the defendant himself actually acquired as the result of the crime."[23]

The Government contends that Defendant is required to forfeit $401,427.83 because it constitutes direct proceeds of his criminal behavior. It points out that Defendant agreed to privatize the Slidell work release program in exchange for bribes and kickbacks, including cash payments, gifts, donations to his campaign account, and various financial benefits to members of his family. Defendant, however, contends that he did not receive some of the amounts the Government seeks to have him forfeit, but rather, the amounts were received by his co-conspirators. This Court will consider each amount in turn.

### 1. *$48,595.16 Representing One-Half of Keen's Net Pay from 2008 to 2014 for the Covington Work Release Program*

First, the Government seeks $48,595.16 because Defendant directed Skip Keen to give him approximately one-half of Keen's net pay from 2008 to 2014 from a part-time position that Defendant procured for him at a work release program in Covington, Louisiana. Defendant argues that these funds should not be subject to forfeiture because they are unrelated to the crime charged, as the Indictment in this case charges a bribery scheme related to St. Tammany Workforce Solutions that occurred from 2013 to 2017, not the Covington work release program.

Contrary to Defendant's contention, "forfeiture is not limited solely to the amounts alleged in the count(s) of conviction."[24] Rather, courts have held

---

[23] *Honeycutt*, 581 U.S. at 454.
[24] United States v. Venturella, 585 F.3d 1013, 1017 (7th Cir. 2009).

8

that forfeiture includes "the total amount gained by the crime or criminal scheme, even for counts on which the defendant was acquitted."[25] Here, the indictment alleged a general "scheme and artifice to defraud . . . through bribery and kickbacks."[26] By Defendant's own admission in his factual basis, Defendant, Keen, and David Hanson, understood that Defendant "would perform the official act of privatizing the Slidell work release program in exchange for Hanson and Keen rewarding him with bribes and kickbacks, including cash payments, gifts, donations to his campaign account, and various financial benefits to members of Strain family."[27] Defendant further conceded that "[t]his understanding was based, in part, on the fact that Strain previously required Keen to kickback approximately half of the money Keen received from working at the Covington work release program to Strain in exchange for securing Keen the job."[28] Thus, forfeiture is not limited to the bribery count to which Defendant pleaded, but instead extends to the entire scheme. As such, the Court finds that the $48,595.16 representing one-half of Keen's net pay from about 2008 to 2014 for the Covington work release program is forfeitable.

### 2. $2,500 Check Issued by Keen Payable to "Jack Strain Campaign"

---

[25] *Id. See also* United States v. Capoccia, 503 F.3d 103, 117–18 (2d Cir. 2007) (stating that, "[w]here the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise," the forfeitable property includes the proceeds of "that scheme, conspiracy, or enterprise"); United States v. Lo, 839 F.3d 777, 793 (9th Cir. 2016) ("Because the proceeds from a mail fraud or wire fraud offense include funds obtained 'as the result of the commission of the offense,' and the commission of such a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole, the proceeds of the crime of conviction consist of the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted.").

[26] Doc. 1 at 9.
[27] Doc. 71 at 7.
[28] *Id.*

9

Next, the Government seeks $2,500 for a check made payable to "Jack Strain Campaign." As explained in the factual basis, in November 2015, St. Tammany Workforce Solutions issued a check to J.K., who then deposited $1,000 into his or her account, withdrew $9,000, and gave a substantial sum of cash to Keen. Thereafter, Keen deposited $2,500 into his account and subsequently issued a check for $2,500 made payable to "Jack Strain Campaign," which was ultimately deposited into the Jack Strain Campaign account. This sum constitutes direct proceeds of Defendant's criminal behavior and is therefore forfeitable.

### 3. *$4,000 Check Issued by Hanson, Made Payable to Defendant's Son, and Drawn on the B.H. Account & $90,000 Salary of Defendant's Nephew for No-Show Work at St. Tammany Work Release Program*

The Government seeks forfeiture of $4,000 for a check made payable to Defendant's son and $90,000 for no-show work paid to Defendant's nephew from 2013 to 2016. In response, Defendant maintains that because he never acquired these funds himself, he is not responsible for forfeiting them. The Government relies on *United States v. Cano-Flores*.[29] There, the United States District of Columbia Circuit Court of Appeals noted that property obtained "indirectly" "might also be seen as embracing property received by persons or entities that are under the defendant's control (such as a closely held corporation, or an employee or other subordinate of the defendant), or property applied to the benefit of persons for whom that defendant has a legal or moral

---

[29] 796 F.3d 83 (D.C. Cir. 2015).

10

obligation of support (such as his children)."[30] *Honeycutt* explains, however, that "[t]he adverbs 'directly' and 'indirectly' modify—but do not erase—the verb 'obtain.' In other words, these adverbs refer to how a defendant obtains the property; they do not negate the requirement that he obtain it at all. . . . In all instances, he ultimately "obtains" the property—whether "directly or indirectly.""[31] The Government does not show that Defendant indirectly obtained the amounts paid to his son and nephew or that he received a benefit from those amounts. Because Defendant never obtained the amounts paid to his son and nephew, those amounts are not forfeitable.

### 4. *$5,333 Representing One-Third Ownership Interest of Hunting Lease*

In January 2016, a payment of $16,000 drawn from the St. Tammany Workforce Solutions account was made to "Big River Outfitters" for a hunting lease to be used for the benefit of Defendant, Keen, and Hanson.[32] The Government argues that Defendant should forfeit $5,333, which is one-third of the hunting lease and reflects the ownership value that Defendant benefitted from the scheme. The Court agrees. Because Defendant obtained the benefit of a lease that was purchased with tainted property, the Court finds that one-third of the hunting lease, or $5,333, reflecting the ownership value that Defendant obtained, is subject to forfeiture.

### 5. *$1,000 Reflecting Bribes and Kickbacks in Various Forms*

The Government argues that Defendant should forfeit $1,000 based on his admission that he received bribes and kickbacks in various forms,

---

[30] *Id.* at 92.
[31] *Honeycutt*, 581 U.S. at 450.
[32] Doc. 1 at 22.

11

"including cash payments, gifts, donations to his campaign account, and various financial benefits to members of Defendant's family."[33] In the factual basis, Defendant admits that Hanson and Keen made payments to him on a recurring basis for not less than $1,000 from the amounts their children received from St. Tammany Workforce Solutions. Accordingly, this amount is forfeitable.

### 6. *One-Third of Keen's Proceeds ($108,333) and One-Third of Hanson's Proceeds ($141,666.67)*

Finally, the Government contends that Defendant is responsible for "one-third ownership of the bribery scheme."[34] As such, it argues that Defendant should forfeit one-third of the payments received by Keen and Hanson over the course of the scheme. Between October 2013 and February 2017, Keen received approximately $325,000 in cash.[35] Between July 2013 and January 2017, Hanson received payments totaling approximately $425,000 in cash.[36] The Government, therefore, seeks forfeiture from Defendant of one-third of Keen's cash proceeds ($108,333) and one-third of Hanson's cash proceeds ($141,666.67).

The Government, however, has not established that Defendant actually obtained one-third of Keen's and Hanson's cash proceeds or that he indirectly benefitted from those amounts. The fact that Defendant facilitated Keen's and Hanson's acquisition of such proceeds does not establish that Defendant himself acquired the proceeds. As the Supreme Court held in *Honeycutt*, a

---

[33] Doc. 71 at 7.
[34] Doc. 78 at 6.
[35] *Id.*
[36] *Id.*

12

defendant may not "be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire."[37] Accordingly, these amounts are not forfeitable.

## CONCLUSION

For the foregoing reasons, forfeiture is ordered in the amount of $57,428.16 against Defendant Rodney Strain. The Government shall prepare a proposed final order of forfeiture.

New Orleans, Louisiana this 12th day of January, 2024.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[37] *Honeycutt*, 581 U.S. at 445.